IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KIMBERLY B. C.,                    )
                                   )
              Plaintiff,           )
                                   )
     v.                            )          1:22CV617
                                   )
KILOLO KIJAKAZI,                   )
Acting Commissioner of Social      )
Security,                          )
                                   )
              Defendant.           )

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Kimberly B. C., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 9, 14; see also Docket Entry 10 (Plaintiff's Memorandum); Docket Entry 12 (Commissioner's Brief); Docket Entry 13 (Plaintiff's Reply)). For the reasons that follow, the Court will enter judgment for the Commissioner.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 214-17), alleging a disability onset date of June 27, 2020 (see Tr. 216). Upon denial of that application initially (Tr. 76-88, 103-07) and on reconsideration

(Tr. 89-102, 113-22), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 123). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 36-75.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 12-32.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 211-13, 297-99), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2025.

2. [Plaintiff] has not engaged in substantial gainful activity since June 27, 2020, the alleged onset date.

. . .

3. [Plaintiff] has the following severe impairments: spinal disorder with degenerative disc disease and stenosis, cervical, thoracic, and lumbar spine; osteoarthritis; chronic obstructive pulmonary disorder ("COPD"), exacerbated by tobacco abuse; asthma; and obesity.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except [she] can no more than frequently balance, can no more than occasionally stoop, crouch, crawl, kneel, and climb

2

stairs or ramps, and cannot climb ladders, ropes, or scaffolds. She should have no required exposure to unprotected heights or dangerous machinery, and no concentrated exposure to dust, fumes, gases, or odors. [She] should have no concentrated exposure to the extremes of humidity, heat, or cold.

. . .

6. [Plaintiff] is capable of performing past relevant work as a [s]ales attendant; [c]ustomer service, retail; and as a [r]etail manager. This work does not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity.

. . .

7. [Plaintiff] has not been under a disability, as defined in the . . . Act, from June 27, 2020, through the date of this decision.

(Tr. 17-32 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ

3

[underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled,

4

but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." <u>Id.</u> "These regulations establish a 'sequential evaluation process' to

_____

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." <u>Id.</u> at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. <u>Id.</u> at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." <u>Hines</u>, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." <u>Hall</u>, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (<i>e.g.</i>, pain)." <u>Hines</u>, 453 F.3d at 562-63.

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## B. Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred by failing to include, or explain the absence of, any limitations in the RFC to account for [Plaintiff]'s mild limitations in interacting with others, [concentrating, persisting, or maintaining pace ('CPP')], and adapting or managing oneself" (Docket Entry 10 at 4 (bold font omitted); see also Docket Entry 13 at 1-9); and

2) "[t]he ALJ erred by failing to account for [Plaintiff]'s non-severe medical impairments as [Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (July 2, 1996) ('SSR 96-8p')] requires, preventing the [ALJ's] decision from being supported by substantial evidence" (Docket Entry 10 at 18 (bold font omitted); see also Docket Entry 13 at 1-9).[5]

The Commissioner contends otherwise and seeks affirmance of the ALJ's decision. (See Docket Entry 12 at 8-19.)

Plaintiff maintains that "[t]he ALJ failed to comply with SSR 96-8p[ in that, d]espite finding [Plaintiff] had mild limitations in interacting with others, CPP, and adapting and managing herself, the ALJ's RFC contains no mental limitations and the ALJ fail[ed]

_____

[5] Because both of Plaintiff's assignments of error challenge the ALJ's alleged failure to account for the effects of Plaintiff's non-severe depression and anxiety in the RFC, this Memorandum Opinion and Order will discuss them together.

8

to explain the absence of such limitations or provide the 'more detailed assessment' of how [Plaintiff]'s limitations in the Paragraph B criteria translate (or fail to translate) into work-related RFC limitations as SSR 96-8p requires." (Docket Entry 10 at 9-10 (citing Tr. 19-20, 22-32) (quoting SSR 96-8p, 1996 WL 374184, at *4) (internal parenthetical citations omitted).) According to Plaintiff, "[w]hen an ALJ finds a claimant has moderate CPP limitations, the RFC must either account for those limitations, or the ALJ must explain the absence of corresponding limitations" (id. at 15 (emphasis added) (citing Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)), and "[m]oderate limitations in other Paragraph B criteria, including social interactions, must be addressed" (id. (emphasis added) (citing Dennis v. Berryhill, 362 F. Supp. 3d 303, 309 (W.D.N.C. Jan. 22, 2019) (unpublished), and Panna v. Colvin, No. 1:14CV229, 2015 WL 5714403, at *3-4 (W.D.N.C. Aug. 31, 2015) (unpublished), recommendation adopted, 2015 WL 5725246 (W.D.N.C. Sept. 29, 2015) (unpublished))). Plaintiff further notes that "[c]ourts have held the ALJ must address mild limitations in Paragraph B criteria in the RFC or explain the absence of corresponding criteria." (Id. (emphasis added) (citing Boone v. Saul, No. 1:20CV94, 2021 WL 1667228, at *3-4 (W.D.N.C. Apr. 27, 2021) (unpublished), McMichael v. Colvin, No. 1:15CV528, 2016 WL 4556768, at *3-4 (M.D.N.C. Aug. 31, 2016) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. Sept.

9

29, 2016) (Schroeder, J.), and <u>Ashcraft v. Colvin</u>, No. 3:13CV417, 2015 WL 9304561, at *6-11 (W.D.N.C. Dec. 21, 2015) (unpublished)).)

Plaintiff additionally argues that "[t]he ALJ's failure to provide a detailed discussion of [Plaintiff]'s <u>mild</u> Paragraph B limitations is harmful due to the nature of [her past relevant work ('PRW')], to which the ALJ found [Plaintiff] could return." (<u>Id.</u> at 10 (emphasis added) (bold font omitted); <u>see also</u> <u>id.</u> at 11-12 (citing <u>Dictionary of Occupational Titles</u> ("<u>DOT</u>"), No. 299.367-010 ("Customer-Service Clerk"), 1991 WL 672630 (G.P.O. 4th ed. rev. 1991), for proposition that job involves Specific Vocational Preparation ("SVP") of 4, Reasoning Development Level ("RDL") of 3, and many tasks involving interaction with others, <u>DOT</u>, No. 185.167-046 ("Manager, Retail Store"), 1991 WL 671299, to note that job requires SVP of 7, RDL of 4, and multiple interaction-related duties, and <u>DOT</u>, App'x B ("Explanation of Data, People and Things"), 1991 WL 688701, to argue that both "job[s] ha[ve] a fifth digit of '6,' indicating the job[s] require[] talking or signaling people to convey information and giving assignments or directions to others").) With regard to Plaintiff's PRW as a sales attendant, Plaintiff contends that "the ALJ . . . identified [that job] with the [<u>DOT</u>] code 299.667-010, both in the decision and at the hearing" (<u>id.</u> at 13 (citing Tr. 31, 68)), but that "this code brings up the job of 'Billposter'" (<u>id.</u> (citing <u>DOT</u>, No. 299.667-010 ("Billposter"), 1991 WL 672641)), and "[Plaintiff] never performed the job of bill poster" (<u>id.</u> (citing Tr. 50-54, 95, 237-

10

39)).  Plaintiff thus asserts that "the ALJ's reliance on the VE's use of the [B]illposter job code to describe [Plaintiff]'s work as a sales attendant is not supported by substantial evidence." (Id.)[6]

In Plaintiff's second, related assignment of error, she faults the ALJ for failing to "consider[] the combined effect of [Plaintiff]'s severe and non-severe impairments as SSR 96-8p requires."  (Id. at 20 (citing Tr. 19-32).)  In Plaintiff's view, "the ALJ's error prevents the Court from knowing whether [Plaintiff]'s anxiety and depression, when considered alongside her severe impairments, have any impact on her RFC."  (Id.)  Plaintiff further notes that "[t]he evidence shows that [she] saw an increase in physical symptoms when under stress raising unanswered questions about how her non-severe anxiety and depression may have impacted her RFC."  (Id. (citing Tr. 58-59, 505).)  For the reasons explained in more detail below, Plaintiff's contentions lack merit.

The United States Court of Appeals for the Fourth Circuit, in finding that an ALJ failed to account for the claimant's moderate limitation in CPP in the RFC, held in Mascio that "the ability to perform simple tasks differs from the ability to stay on task" and

---

[6] Plaintiff's argument glosses over the fact that the DOT assigns the "Sales Attendant" job the number 299.6**7**7-010, which contains a fifth digit just one number off of the "Billposter" job, assigned number 299.6**6**7-010.  Compare DOT, No. 299.667-010 ("Billposter"), 1991 WL 672641, with DOT, No. 299.677-010 ("Sales Attendant"), 1991 WL 672643.  As the ALJ and the VE both referred to the job they discussed as "sales attendant" (Tr. 31, 68-70), the Court finds that the ALJ's and VE's usage of the Billposter's DOT number constituted a mere mis-citation of the Sales Attendant's job number, rather than reliance on a job that Plaintiff did not perform.

11

that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . .

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added); see also Mascio, 780 F.3d at 638 ("Perhaps the ALJ can explain why [the plaintiff's] moderate limitation in [CPP] at step three does not translate into a limitation in [her RFC]." (emphasis added)).

Furthermore, it remains unclear whether Mascio applies to mild as opposed to moderate limitations, and to limitations in broad functional areas other than CPP. See Britt v. Saul, 860 F. App'x 256, 262 n.3 (4th Cir. 2021) ("It is unclear whether an [ALJ] must specifically address a claimant's mild impairment in [CPP] in the [RFC] analysis."). Although McMichael and Ashcraft both remanded for an ALJ's failure to adequately account for mild limitations in the broad areas of functioning, see McMichael, 2016 WL 4556768, at *2-6 (CPP); Ashcraft, 2015 WL 9304561, at *6-11 (daily activities, social functioning, and CPP), many cases exist to the contrary, see Finley v. Kijakazi, No. 4:22CV1098, 2023 WL 3089922, at *7 (D.S.C. Apr. 26, 2023) (unpublished) ("There is no Fourth Circuit Court of

12

Appeals case finding that 'mild' limitations in CPP must be explained in the RFC; *Mascio* itself related to 'moderate' limitations and 'severe' mental impairments."); Byrd v. Kijakazi, No. 5:21CV527, 2023 WL 2769505, at *6 (E.D.N.C. Jan. 31, 2023) (unpublished) ("[T]he holding in *Mascio* . . . that an ALJ must account for a claimant's *moderate* limitations in [CPP] in the RFC or explain why no limitation is necessary, has not been extended by the Fourth Circuit to *mild* limitations in this functional area . . . ." (emphasis in original)), recommendation adopted, 2023 WL 2760058 (E.D.N.C. Mar. 31, 2023) (unpublished); Carol H. v. Kijakazi, No. 5:20CV35, 2021 WL 3561241, at *12 (W.D. Va. Aug. 12, 2021) (unpublished) ("[I]mportantly, a 'moderate' limitation is greater than a 'mild' limitation, and the Fourth Circuit has not decided whether to extend *Mascio* to those instances in which an ALJ identifies only 'mild' mental limitations . . . ."), recommendation adopted, 2021 WL 4027199 (W.D. Va. Sept. 3, 2021) (unpublished); Martin v. Saul, No. 9:18CV3172, 2020 WL 2813788, at *8 (D.S.C. Jan. 16, 2020) (unpublished) (noting that "most district court decisions [in the Fourth Circuit] have found to the contrary [of Ashcraft]"), recommendation adopted, 2020 WL 1329395 (D.S.C. Mar. 23, 2020) (unpublished); Morrison v. Berryhill, No. 1:16CV337, 2018 WL 1311207, at *5 (W.D.N.C. Feb. 8, 2018) (unpublished) (deeming "[the p]laintiff's heavy reliance on Mascio . . . misplaced" and noting that, since "about a month after the Mascio decision," many cases

13

in the Western District of North Carolina "have held that the requirements of Mascio do not necessarily apply where a plaintiff is found to have *mild* limitations in CPP" (emphasis in original)), recommendation adopted, 2018 WL 1308139 (W.D.N.C. Mar. 13, 2018) (unpublished); Thorp v. Berryhill, No. 3:16CV70, 2018 WL 325318, at *3 (W.D.N.C. Jan. 8, 2018) (unpublished) (holding that "case differ[ed] markedly from Mascio," because the plaintiff "had mild difficulties maintaining [CPP]" (emphasis added)); Williamson v. Berryhill, No. 7:16CV284, 2017 WL 4293408, at *5 (E.D.N.C. Sept. 27, 2017) (unpublished) (deeming the "plaintiff's reliance on Mascio [] inapt," where ALJ found "only *mild* limitations in activities of daily living, social functioning, or CPP" (emphasis in original)); Franklin v. Berryhill, No. 1:16CV211, 2017 WL 4274190, at *2-3 (W.D.N.C. Sept. 26, 2017) (unpublished) ("This Court does not interpret Mascio's holding as applying to all restrictions."); Gilbert v. Berryhill, No. 5:16CV100, 2017 WL 1196452, at *3 (W.D.N.C. Mar. 29, 2017) (unpublished) ("As this case concerns only 'mild difficulties,' it does not trigger the RFC discussion requirements of Mascio per se." (emphasis added) (internal quotation marks omitted)); Guest v. Colvin, No. 1:15CV776, 2016 WL 4007612, at *6 (M.D.N.C. July 26, 2016) (unpublished) (expressing "doubt [] as to whether Mascio's holding with regards to [CPP] should apply to" a case involving mild limitations in social functioning, "particularly given that the

14

Fourth Circuit made clear its CPP-based holding rested on the distinction between the ability to perform simple tasks and the ability to stay on task, and such a distinction does not clearly apply in the social functioning context" (internal citation omitted), recommendation adopted, slip op. (M.D.N.C. Aug. 24, 2016) (Schroeder, J.); Thompson v. Colvin, No. 1:15CV234, 2016 WL 3610161, at *3 (W.D.N.C. July 1, 2016) (unpublished) ("The Court does not read Mascio to impose a duty on ALJs to automatically or necessarily account for mild limitations in the RFC." (emphasis added)).

The Court finds particularly persuasive a decision from another member of this Court which well-explained the reasoning behind declining to extend Mascio to mild limitations in the broad functional areas:

> [T]he ALJ made these findings [of mild limitation in CPP] in the course of her discussion at step two of the [SEP], in which she found that [the p]laintiff's mental impairment of depression does not cause more than minimal limitation in the [plaintiff]'s ability to perform basic mental work activities and is therefore nonsevere. This analysis differs from the typical Mascio scenario, in which the ALJ, having already identified one or more mental impairments as severe at step two, then performs a step three evaluation as to whether the degree of functional limitation resulting from [the p]laintiff's mental impairment(s) meets or equals a listed impairment. In that scenario, the resulting Mascio challenge stems from the ALJ's failure, or alleged failure, to include limitations from the [plaintiff's] severe impairments in the RFC.
>
> This distinction is significant. "Basic work activities" are defined as functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying,

15

> handling, seeing, hearing, speaking, understanding,
> carrying out and remembering simple instructions, using
> judgment, responding appropriately to co-workers and
> supervisors, and dealing with changes in a routine work
> setting. 20 C.F.R. § 404.1522(b). Here, the ALJ found
> that [the p]laintiff's mental impairment of depression
> was nonsevere, meaning that it does not cause more than
> minimal limitation in his ability to perform basic mental
> work activities. Thus, the ALJ explained why there was
> no mental limitation in [the p]laintiff's RFC, based on
> the ALJ's determination that [the p]laintiff's mental
> impairment did not affect his ability to perform basic
> work activities. In the circumstances, [the p]laintiff's
> <u>Mascio</u> challenge is without basis.

<u>Brownlee v. Saul</u>, No. 1:18CV642, 2019 WL 3858652, at *7 (M.D.N.C. Aug. 16, 2019) (unpublished) (Peake, M.J.) (certain internal citations, brackets, and quotation marks omitted), <u>recommendation adopted</u>, 2019 WL 4723257 (M.D.N.C. Sept. 26, 2019) (unpublished) (Osteen, J.). Thus, the weight of post-<u>Mascio</u> authority among the district courts in the Fourth Circuit does not favor extending <u>Mascio</u> to <u>mild</u> limitations in the broad functional areas.

Moreover, even assuming <u>Mascio</u> applies to 1) <u>mild</u> limitations in the broad areas of functioning (i.e., the lowest of four levels above "none"), and 2) functional areas other than CPP, Plaintiff has not shown prejudicial error here. First, Plaintiff does not suggest what additional limitations the ALJ should have included in the RFC to account for her <u>mild</u> limitations in interaction, CPP, and adaptation. (<u>See</u> Docket Entries 10, 13.) That failure precludes relief. <u>See</u> <u>Carol H.</u>, 2021 WL 3561241, at *13 (rejecting the plaintiff's argument that ALJ failed to account for mild mental limitations in RFC, where the plaintiff "did not explain what

functional limitations [the] ALJ [] should have included in the RFC or discuss why any mental limitations were warranted in light of the record as a whole"); Humphries v. Colvin, No. 3:15CV376, 2016 WL 8223429, at *5 (W.D.N.C. Oct. 17, 2016) (unpublished) (declining relief on similar claim where "it d[id] not appear that [the p]laintiff [wa]s actually alleging based on contradictory evidence in the record that she ha[d] limitations that [we]re not addressed by the RFC; rather, she [wa]s simply arguing that her 'at most, <u>mild</u> limitations' [we]re cause for remand because the ALJ's decision d[id] not apply the same analysis the Fourth Circuit [in <u>Mascio</u>] would require for review of 'moderate' limitations in [CPP]" (emphasis added)), <u>recommendation adopted</u>, 2017 WL 525666 (W.D.N.C. Feb. 8, 2017) (unpublished).

Second, the ALJ's step two evaluation cites to substantial evidence to support the lack of additional mental restrictions in the RFC. The ALJ provided the following analysis to support his findings of <u>mild</u> limitation in interaction, CPP, and adaptation:

> The [second] functional area is interacting with others. In this area, [Plaintiff] has mild limitation. While [Plaintiff] had a depressed mood immediately after the death of her daughter, [Plaintiff]'s <u>longitudinal examinations reveal a normal mood and affect and show she was not in distress.</u> [Plaintiff]'s anxiety and depression were <u>treated conservatively by her primary care provider</u> and [Plaintiff] <u>did not require counseling or professional mental health treatment</u> to manage her symptoms. [Plaintiff] reported driving her son and girlfriend places and she reported grocery shopping, which requires interaction with others. <u>Both state agency consultants found a mild limitation in interacting with others</u>. Therefore, [the ALJ] find[s Plaintiff] has

17

no more than a mild limitation in interacting with others.

The third functional area is [CPP]. In this area, [Plaintiff] has a mild limitation. [Plaintiff] was consistently noted to be <u>alert and oriented at all exams</u>. She had <u>normal behavior and thought content</u>. [Plaintiff]'s neurology examinations documented that she had a <u>normal attention span and normal concentration</u>. [Plaintiff]'s pain was treated generally conservatively with some improvement. <u>Both state agency consultants found a mild [limitation in CPP]</u>. Therefore, considering the combined effects of all her impairments, [the ALJ] find[s Plaintiff] has no more than a mild limitation in [CPP].

The fourth functional area is adapting or managing oneself. In this area, [Plaintiff] has a mild limitation. [Plaintiff] was noted to be well appearing other than when she presented with the pulmonary emboli, and there was otherwise <u>no documentation of a disheveled appearance or grooming</u>. [Plaintiff]'s examinations show that she had <u>normal judgment</u>. [Plaintiff] <u>did not require inpatient treatment</u> for her mental impairments and her impairments were <u>treated conservatively on an outpatient basis by her primary care provider. Both state agency consultants found a mild limitation in adapting or managing oneself</u>, which is well supported by [Plaintiff]'s longitudinal treatment records.

Because [Plaintiff]'s medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas <u>and the evidence does not otherwise indicate that there is more than a minimal limitation in [Plaintiff]'s ability to do basic work activities</u>, they are non-severe.

(Tr. 20 (internal parenthetical citations omitted) (emphasis added).)

The above-quoted discussion clarifies why, notwithstanding finding Plaintiff <u>mildly</u> limited in interaction, CPP, and adaptation, the ALJ did not include additional mental limitations in the RFC. See <u>Britt</u>, 860 F. App'x at 262 ("The discussion in

Case 1:22-cv-00617-LPA   Document 15   Filed 08/03/23   Page 18 of 23

step-two that the[] limitations [from non-severe impairments] had a minimal impact on vocation and were being managed tells us what impact these limitations had in the [RFC] analysis. We can conduct a meaningful review without making an [ALJ] repeat himself."); Ramona A. v. Kijakazi, No. 5:20CV66, 2022 WL 993559, at *6 (W.D. Va. Mar. 31, 2022) (unpublished) ("The ALJ considered whether [the plaintiff]'s anxiety caused functional limitation[ and ] found that [the plaintiff]'s non-severe anxiety caused 'no more than "mild" limitation in any of the functional areas and the evidence d[id] not otherwise indicate that there [wa]s more than a minimal limitation in [her] ability to do basic work activities.' Thus, it is a misreading of the ALJ's decision to assert that her step two determination found functional limitations that should have been included in the RFC." (emphasis in original) (internal parenthetical citation omitted)).

Third, the ALJ's discussion of the mental opinion evidence lends further support to the omission of additional mental restrictions in the RFC to account for mild deficits in interaction, CPP, and adaptation. Notably, Plaintiff did not provide any opinions from her treating sources regarding any limitations caused by her mental impairments. Moreover, the ALJ found "persuasive" (Tr. 30) the opinions of the state agency psychological consultants that Plaintiff's mental impairments qualified as non-severe (see Tr. 82-83, 93-94) and did not result

19

in any limitations in the RFC (see Tr. 85-86, 96-99), and provided the following analysis to support that finding:

> [The state agency psychological consultants] both found that [Plaintiff] had non-severe mental impairments, which cause no limitation in understanding, remembering or applying information and mild limitations in interacting with others; [CPP]; and adapting or managing oneself. The prior administrative findings of these state agency consultants are persuasive because they are <u>consistent with one another and there are no other conflicting medical opinions</u>. While they did not examine [Plaintiff] in person, their findings are also <u>well supported by [Plaintiff]'s frequently normal mental status findings, [her] conservative treatment by her primary care provider, and the narrative review and analysis by each consultant regarding [Plaintiff]'s treatment records</u>. Furthermore, these consultants are licensed medical specialists in psychiatry and psychology and they are expertly familiar with [SSA] policy regarding the program requirements for disability. Therefore the findings of these [s]tate agency medical experts have been found persuasive.

(Tr. 30 (underscoring added) (internal parenthetical citation omitted).) That analysis permits the Court to meaningfully review the ALJ's omission of mental limitations in the RFC. See Carol H., 2021 WL 3561241, at *12 (finding no merit to the plaintiff's argument that ALJ failed to account for mild mental limitations in RFC, where ALJ "credited the [state agency] psychologists' medical opinions that [the plaintiff]'s mental impairments were 'not severe,' explaining that the record supported their conclusions"). Coordinately, because the Court can meaningfully review the ALJ's omission of mental limitations in the RFC, the Court also finds supported by substantial evidence the ALJ's adoption of the VE's testimony (see Tr. 31-32) that an individual with Plaintiff's non-

mentally-limited RFC can perform her semi-skilled and skilled PRW (see Tr. 69-70).[7]

Plaintiff's related contentions in her second assignment of error asserting that the ALJ failed to "consider[] the combined effect of [Plaintiff]'s severe and non-severe impairments as SSR 96-8p requires" (Docket Entry 10 at 20 (citing Tr. 19-32)) fare no better. Plaintiff essentially repackages the argument in her first assignment of error to contend that the ALJ erred by not evaluating Plaintiff's non-severe depression and anxiety in combination with her severe impairments. (See id.) A recent decision from the Fourth Circuit undermines Plaintiff's argument:

> While the [ALJ] did not specifically address [the plaintiff]'s chronic pain, reflux, and hypothyroidism in the [RFC] analysis, neither our caselaw nor the regulations explicitly require this. The [ALJ] is only required to _consider_ these non-severe impairments. And even if specifically addressing these impairments was required, our review is not frustrated by this omission as these impairments were addressed under step two and deemed to be non-severe limitations. The discussion in step-two that these limitations had a minimal impact on vocation and were being managed tells us what impact these limitations had in the [RFC] analysis. We can conduct a meaningful review without making an [ALJ] repeat himself. Thus, we find the [ALJ]'s analysis to be proper here.

Britt, 860 F. App'x at 262 (italics in original) (underscoring added) (internal citation omitted). Here, the ALJ not only considered Plaintiff's non-severe anxiety and depression in his RFC

---

[7] The Court notes that Plaintiff testified that she left her last job as a customer service representative at Target not because of any mental limitations, but because of progressively worsening back pain. (See Tr. 51.)

analysis, he <u>expressly discussed</u> them, as quoted above, in his analysis supporting his crediting of the state agency psychological consultants' opinions that Plaintiff's mental impairments rated as non-severe. (<u>See</u> Tr. 30; <u>see also</u> Tr. 20 (discussing Plaintiff's mental symptoms and pain together in analyzing Plaintiff's CPP limitation and stating, "<u>considering the combined effects of all her impairments</u>, [the ALJ] find[s Plaintiff] has no more than a mild limitation in [CPP]" (emphasis added)).) Absent a concrete showing that the ALJ did not in fact consider the combined effect of Plaintiff's non-severe and severe impairments (which Plaintiff did not provide), the Court may take the ALJ at his word, <u>see</u> <u>Bell v. Berryhill</u>, No. CV 9:17-1951, 2018 WL 4560719, at *11 (D.S.C. June 20, 2018) (unpublished) (holding that court should take ALJ "at her word when she states that she considered all of the claimant's impairments in combination" (citing <u>Flaherty v. Astrue</u>, 515 F.3d 1067, 1071 (10th Cir. 2008))), <u>recommendation adopted</u>, 2018 WL 3912952 (D.S.C. Aug. 16, 2018) (unpublished).

In sum, as the ALJ's decision 1) provides an "accurate and logical bridge," <u>Woods v. Berryhill</u>, 888 F.3d 686, 694 (4th Cir. 2018) (internal quotation marks omitted), between the ALJ's findings of mild limitations in interaction, CPP, and adaptation at step two of the SEP and the RFC, and 2) demonstrates the ALJ considered the combined effects of Plaintiff's severe and non-

22

severe impairments, Plaintiff's assignments of error fail as a matter of law.

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 9) is denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) is granted, and that this action is **DISMISSED** with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 3, 2023